37 C.C.P.A. (Patents)

**In re SMITH.**
**Patent Appeals No. 5699.**

United States Court of Customs and Patent Appeals.

June 30, 1950.

Pennie, Edmonds, Morton & Barrows, New York City (James W. Laist, New York City, Clarence M. Fisher, Washington, D. C., and Ambrose A. Arnold, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C., (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming rejections by Primary Examiners of two claims numbered 24 and 25 reading:

"24. The method of working beta brass which comprises plastically deforming the alloy at a temperature in the range from 100° to 350°C. sufficiently to elongate the grains of the worked alloy in the manner characteristic of metals that have been subjected to more than 25% plastic deformation at temperatures below the recrystallization temperature and without injuring the thus-worked alloy, the extent of said plastic deformation without injury to the worked alloy being substantially greater than the extent to which the same alloy can be plastically deformed without injury at room temperature.

"25. Beta brass which has been extensively plastically worked at a temperature in the range from 100° to 350°C. as evidenced by plastic deformation of the alloy grains (without injury to the worked alloy) to an extent greater than 25% reduction in cross-sectional area at a temperature below the recrystallization temperature, said grains consequently having a long diameter in the direction of working at least twice as great as the short diameter substantially perpendicular to the direction of working, said plastic deformation of the alloy grains without injury to the worked alloy being on the average substantially greater than exists in a specimen of the same alloy composition plastically deformed at room temperature to the maximum extent possible without injury to said specimen."

The appealed claims were rejected, along with others not appealed, because the respective tribunals of the Patent Office deemed them uninventive over disclosures of prior art, the single reference cited being, as stated in the decision of the board:

"'Metals' by Carpenter and Robertson, Vol. II, 1939, Oxford University Press N.Y., Page 1302."

It will be observed that claim 24 is a method claim and claim 25 is for the product resulting from practice of the method.

It may be said that in the Patent Office several other method claims and one other product claim (numbered 23) were involved, and that a practice which the Patent Office began some years ago, usually referred to as "duel prosecution," was followed. Under that practice the method claims of appellant's application were passed upon and rejected by an examiner in Patent Office Division 13 to which division was committed general jurisdiction of the application. The two product claims were passed upon and rejected by an examiner in Division 3.

When the appeals to the board were taken the decisions of the respective examiners were consolidated.

The appeal to us relates only to the rejection of method claim 24, supra, and product claim 25, supra. It is obvious that those claims are not patentably distinguishable— that is, the two stand or fall together.

It will be noted that the claims relate only to alloys which, when combined, constitute what is known to those skilled in the brass making art as beta brass.

In the specification it is recited that there are three important alloys of copper and zinc which can be classified as alpha brass, alpha plus beta brass, and beta brass; that alpha brass contains up to about 35% zinc, the balance being copper; that such alloys are workable both hot and cold and have reasonable strength and excellent ductibility at room temperature.

A footnote of appellant's brief, referring to the record, explains:

"1 The term 'workable' refers to the ability of an alloy to undergo mechanical working such as rolling, drawing, swaging, heading, cupping, coining, stamping, forging, etc. * * * into desired commercial shapes without cracking or failure of any

kind. Equivalent terms frequently used are 'plastically workable', 'plastically deformable', etc."

The following is quoted from the specification of appellant's application:

"The present invention provides a new and novel method of working alloys of beta brass structure, for I have found that they are unexpectedly plastic at temperatures in the range 100°C. to 350°C. Temperatures in this range are low enough to permit the utilization of ordinary metal-working equipment intended for use at room temperatures, and which give to the final product an accuracy of dimension and fineness of finish that cannot be achieved by hot working methods.

"Stated concisely, the invention contemplates the method of working an alloy predominantly comprising copper and zinc (such, for example, as an alloy of copper with 42 to 51 per cent zinc), having a body-centered-cubic crystal structure (the crystal structure of the beta brasses), which comprises plastically deforming said alloy at a temperature in the range 100°C. to 350°C. Often it is advantageous to subject the alloy to plastic deformation in the narrower range of 150°C. to 300°C. in order to insure against development of any defect in the metal during working. A working temperature of about 200°C. is optimum for many beta brass alloys. Frequently it is most convenient to hot work the alloy (in the hot working range of 500°C. to 850°C.) approximately to finished size, and then to work the alloy substantially to its finished size and shape by plastic deformation at a temperature in the range of the invention. If desired the alloy may be cold-worked substantially at room temperatures after working in the temperature range of the invention in order to develop a degree of work-hardening, but such cold-working cannot in general exceed 25 per cent reduction in cross-sectional area without developing cracks or other defects."

The foregoing, of course, relates to the method embodied in claim 24, supra. Immediately after it is the following, which relates to the composition defined in claim 25, supra:

"The invention further embraces the plastically worked alloy produced by the method of the invention."

In the decisions of the respective Primary Examiners the claims here before us were very fully discussed and reasons were given for applying the reference.

The Board of Appeals in its decision epitomized the statements and holdings of the respective Primary Examiners and we quote the following pertinent excerpts from the board's decision:

"* * * In * * * the specification * * * appellant states: 'So far as alloys composed substantially entirely of copper and zinc are concerned, the process of working in accordance with my invention can be applied most usefully in the range from 42 to 51 per cent zinc because below 42 per cent zinc enough of the alpha phase is present to permit working by ordinary cold rolling methods and much above 51 per cent the gamma phase will be precipitated at 200° C. and the alloy will become brittle.' The Examiner has adopted this quoted part of the disclosure as showing the scope of the range of alloys contemplated by appellant in the claims. "The reference relied on by the Examiner is page 1302 of Metals by Carpenter and Robertson, Vol. II, 1939. This page is concerned only with alloys of copper and zinc. It shows a graph made by Bunting based on impact tests of various alloys at various temperatures. In Fig. 543 using an Izod value of 15 ft.—1b. as the boundary between tough and brittle, the brittle range was shown to cover the region represented by area A. The reference goes on to state: 'This figure accords with experience. Alloys containing up to about 45 per cent of zinc are ductile at temperatures up to 250° C. All copper-zinc alloys within this range are suitable for cold-working.'

"With respect to process claims 8, 9, 10, 18 to 22, inclusive, and 24, it is the position of the Examiner of Division 13 that the claims fail to define anything patentable over page 1302 of Metals. The Examiner points out that the reference states that alloys containing up to 45% zinc are ductile at temperatures up to 250° C. and all cop-

per-zinc alloys within this range are suitable for cold working. Since the Examiner considers the claims to cover the range of 42 to 51 per cent of zinc in the copper-zinc alloy, he holds that it is clear that the reference shows an alloy which is covered by the claims, at least up to about 45% zinc. Moreover, since the reference states that such alloys are ductile up to 250° C., the Examiner points out that this meets the requirement that the alloy can be subjected to plastic deformation at a temperature between 100° C. and 350° C., without injury. The Examiner, therefore, fails to see how the claims can be regarded as patentable over page 1302 of Metals, since by appellant's own definition, he has included copper alloys of 42 to 51 per cent zinc as being within the purview of his invention and the reference shows alloys within this range being cold workable and ductile up to 250° C. * * *

* * * * * *

"Claims 23 and 25 were rejected by the Examiner of Division 3 as unpatentable over the prior art as acknowledged by appellant in paper No. 7, Amendment C, page 4, filed August 14, 1945, wherein it is stated: 'Thus, the prior art recognized that beta brasses could be cold-worked only to 15 to 25% reduction of area in the normal cold-working range of from 15 to 60° C.'

"The Examiner points out that the claims differ from such prior art cold worked beta brass in degree only, not in kind. This Examiner, like the Examiner of Division 13, has also held the limitation 'alloy having the structure of beta brass' is indefinite."

The Board of Appeals also stated the arguments made before it by appellant, saying:

"Appellant, in an extensive and carefully worded brief, believes that the Examiner has (1) totally ignored credible affidavits, and (2) ignored the fact that not all alloys of copper and zinc containing 42 to 51% zinc are beta brasses. With respect to the first error, the Examiner in his reply to brief states that all affidavits were carefully considered but not given sufficient weight to overcome the reference. * * *

"The appellant refers to the specification, * * * to show that in pure copper-zinc, alloys at low temperatures, the beta phase extends from about 50 per cent to about 45 per cent zinc. The wider range of 42 to 51 per cent zinc does not always give a beta brass, according to appellant, who refers to several affidavits to show that below 45% zinc, there has to be a quenching from an elevated temperature to obtain beta brass.

"The diagram based on impact tests in page 1302 of Metals is criticized as arbitrary and as having no significance in relation to plastic deformation. The appellant calls attention to the hot working of 70/30 cartridge brass which the diagram holds is brittle."

The same arguments in slightly different phraseology were presented before us and we have given them careful consideration.

We have studied the specification and the affidavits. Of course, the recitals of the specification must control. Appellant does not insist otherwise, and, as we understand it, presents the affidavits merely to support a claimed interpretation of the specification itself. The board said, *inter alia:*

"* * * Appellant admits that beta brass is always formed when a pure copper-zinc alloy is made up of about 45 to about 50 per cent zinc; * * *. Page 1302 of Metals points out that copper-zinc alloys up to about 45 per cent zinc are ductile up to 250° C. We consider that there is an overlap as to the lower limit of about 45% or at least a meeting at this point and hence, the reference may properly be regarded as reading on a beta brass of about 45 per cent zinc. The reference shows such a 45 per cent alloy, which appellant has shown must always be a beta brass in a two component alloy, can be worked up to 250° C., which is within the range recited in the claims.

"Accordingly, we feel that the claims are clearly unpatentable over the reference. The feature of first hot working the brass is admittedly old in the art and it clearly cannot add anything patentable."

We are not convinced that the board erred and its decision is affirmed.

Affirmed.