50 CCPA

**Application of Thomas L. JACOBS and Ronald S. Bauer.**

**Patent Appeal No. 6973.**

United States Court of Customs and Patent Appeals.
June 10, 1963.

"6. Normally solid polyperfluoro-allene having an infrared band at 1715 cm$^{-1}$ and having the repeating unit (-$\overset{.}{C}$-CF$_2$-)."

$$CF_2$$

Claims 3, 4 and 5, drawn to a process for preparing perfluoroallene, have been allowed.

The reference relied on by the examiner and the board is:

Miller    2,668,182    Feb. 2, 1954

Bernd W. Sandt and Frederick Schafer, Washington, D. C., for appellants.

Clarence W. Moore, Washington D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 2 and 6 of appellants' application Ser. No. 671,131, filed July 11, 1957 for PERFLUOROALLENE.

The nature of appellants' invention is evident from a consideration of the appealed claims which are:.

"2. Perfluoroallene having a boiling point at –38°C. and characterized by a strong infrared band at 2065 cm$^{-1}$.

The Miller patent discloses polyunsaturated fluoroolefins one of which is a compound termed perfluoroallene, i. e. CF$_2$ = C = CF$_2$, having the boiling point —28°C. The patentee discloses that the polyunsaturated fluoroolefins of his invention, because of their unsaturation, are "exceedingly versatile compounds for syntheses and for polymerizations." He also states that his polyunsaturated fluoroolefins "may be copolymerized with other olefins."

The examiner's position is that the Miller patent fairly meets the substance of the appealed claims since the patent discloses the compound of appealed claim 2 "by name and structural formula and further discloses polymers thereof." The sole issue is the applicability of the Miller patent in light of the specific facts before us.

In considering the Miller patent, if that patent describes a compound which *is* perfluoroallene,[2] i. e. CF$_2$ = C = CF$_2$, in a manner sufficient to convey its existence to those skilled in the art, then it is clear that appellants are not entitled to claim the compound perfluoroallene.

1. A second Miller patent 2,729,613 issued Jan. 3, 1956 was cited by the examiner and the board. The examiner, however, did not reject the appealed claims on that second Miller patent and we consider it unnecessary to discuss that patent in this opinion.

2. Allene is a compound having the structural formula CH$_2$=C=CH$_2$ and boiling at –32°C. (Lange's Handbook of Chemistry 9th Ed., p. 394 (1956)). The prefix "perfluoro" in perfluoroallene signifies "exhaustive substitution" of the hydrogens in allene by fluorine (The Condensed Chemical Dictionary, 5th Ed. p. 837 (1956)).

The specification of the Miller patent reads:

"The compound perfluoroallene, $CF_2 = C = CF_2$, B.P. $-28°$ C. is prepared by carrying out the following reaction steps:

$$CF_2=CClCF_2Cl \xrightarrow[\text{acetone}]{\text{NaI}} CF_2=CClCF_2I$$

$$CF_2=CClCF_2I \xrightarrow[\text{dioxane}]{\text{Zn}} CF_2=C=CF_2$$

———◆———

"Both reaction steps are carried out at the reflux temperature of the solvent at atmospheric pressure. The product is distilled out as it is formed. This reaction illustrates the preparation of a compound having at least two double bonds, only 3 carbon atoms, and at least one fluorine atom attached to one of the carbon atoms."

Claim 9 in the patent reads:

"9. Perfluoroallene, B.P. $-28°$C."

An analysis of appellants' application shows that the product described as perfluoroallene in appellants' claim 2 is characterized by the structural formula $CF_2 = C = CF_2$. Appellants disclose that that compound may be prepared by either of two reactions described in the following equations:

$$CF_2=CH-CF_2Br+KOH \longrightarrow CF_2=C=CF_2+KBr+H_2O$$
$$CF_2Br-CH_2-CF_2Br+2KOH \longrightarrow CF_2=C=CF_2+2KBr+2H_2O$$

———◆———

Appellants' compound is further characterized in the application as having a boiling point of $-38° \pm 0.1°$ C. and a strong infrared band at 2065 cm$^{-1}$. The calculated percentage of carbon and molecular weight for $CF_2=C=CF_2$ are 32.16 and 112.0 respectively. It is stated in the application that an analysis of appellants' compound gave a carbon percentage of 31.80 while a molecular weight determination of the compound resulted in a value of 114. Addition of chlorine to appellants' compound is said to have resulted in the formation of 1,2,2,3-tetrachloro-1,1,3,3-tetrafluoropropane, i. e.

$$\overset{\text{Cl}}{\underset{}{CF_2}}-\overset{\text{Cl}}{\underset{|}{CCl_2}}-CF_2,$$

as shown by comparison of boiling point, refractive index and infrared spectrum with a separately prepared authentic sample of 1,2,2,3-tetrachloro-1,1,3,3-tetrafluoropropane.

It is appellants' belief that the compound described as perfluoroallene in the Miller patent never existed and that if in fact a compound could be produced from Miller's process at all, it is not the same compound as claimed by appellants in appealed claim 2. Since there can be but one compound named perfluoroallene, i. e. $CF_2 = C = CF_2$, appellants' argument in effect is that the disclosure in the Miller patent is inoperable to produce perfluoroallene and hence in error.

In order for appellants to prevail, and in view of the Miller disclosure, we think that appellants have the burden of proving that Miller's process was not operative to produce perfluoroallene and could not be made operative by use of ordinary skill of the art, and that therefore Miller's perfluoroallene never existed. Bullard Co. et al. v. Coe, Com'r Pats., 79 U.S.App.D.C. 369, 147 F.2d 568. Furthermore, this court, in In re Spence, 261 F.2d 244, 46 CCPA 722, 725, said:

"The invention disclosed in a patent is presumed to be operative because the patent enjoys a statutory presumption of validity, 35 U.S.C. § 282, and operativeness is a prerequisite to validity, 35 U.S.C. § 101. An inoperative device lacks the utility which is required by statute."

After a careful consideration of the Miller patent and the evidence presented by appellants, we are not convinced that appellants have sustained their burden of showing that the compound referred to by Miller as perfluoroallene never existed, nor that the patentee was in error in stating that he obtained $CF_2 = C = CF_2$.

In the factual situation before us we do not have merely evidence of knowledge of a name of a chemical compound. Rather, Miller has not only described the compound by name but has characterized it with a specific structural formula, i. e. $CF_2 = C = CF_2$, has identified it by a specific boiling point, $-28°C.$, and has described a method of preparation for that compound. The Patent Office considered that disclosure sufficient to entitle Miller to the patented claim reading:

"Perfluoroallene, B.P. $-28°C.$"

Appellants refer to an article by them which appeared in the Journal of the American Chemical Society. This article in part reads:

"Tetrafluoroallene [perfluoroallene] is of special interest as a monomer that might yield useful polymers. Miller [2] [3] reported its synthesis by the reaction of 2-chloro-3-iodo-1,1,3,3-tetrafluoro -1- propene with zinc in dioxane. No experimental details were given and we have been unable to make the compound by this reaction, obtaining instead good yields of the coupled product, 2,5-dichloro-perfluoro-1,5-hexadiene."

There is no indication, however, in that article just what appellants did in attempting to synthesize perfluoroallene by the reaction of 2-chloro-3-iodo-1,1,3,3-tetrafluoro-1-propene, i.e., $CF_2 = CC_1CF_2I$, with zinc in dioxane. Thus this article is without value in helping us to determine the issues here.

Appellants have also cited an article coauthored by the patentee and another which appeared in the Journal of the American Chemical Society in 1957.[4] There the preferential replacement of iodine in 3-iodopentafluoropropene and in 2-chloro-3-iodotetrafluoropropene by reaction with chlorine and bromine and with chloride and bromide ions is described, as well as reactions of perfluoroallyl iodide with zinc dust in methanol or anhydrous dioxane.

Appellants refer specifically to an experimental portion in that article which reads:

"$CF_2 = CC_1CF_2I$ + Zn in Anhydrous Dioxane: $CF_2 = CC_1CF_2CF_2$ $CC_1 = CF_2$.—To a well-stirred suspension of 100 g. of Zn dust in 400 ml. of anhydrous dioxane at reflux was added 169 g. of $CF_2 = CC_1CF_2I$ (0.62 mole) over a half-hour period. There was no noticeable heat effect at any time; the mixture was held near reflux for 6 hours, and material was distilled out to the boiling point of dioxane, 100.7° (747 mm.). The distillate contained nothing boiling below room temperature. It contained a small amount of unidentified material boiling at 45°, having a very pungent odor, but was principally a dioxane azeotrope, b. p. 98.5° (747 mm.), $n_D^{20}$ 1.3989, ca. 54% dioxane by wt., which gave on drowning in water a 32% yield of

3. Footnote 2 in that article refers to Miller 2,668,182 as well as to a reference in Chemical Abstracts, *49*, 2478 (1955), which abstracts Miller's finding.

4. Although the examiner in effect invited submission of an affidavit under Rule 132

of the Patent Office to overcome the effect of the Miller patent, no showing under Rule 132 substantiating the contents of the two articles cited by appellants has been submitted.

$CF_2 = CC1CF_2CF_2CC1 = CF_2$ * *
b. p. 112.8° (735 mm.)."

Appellants point out that the authors in that experimental portion state that *no product* boiling below room temperature was isolated. Appellants also contend that "The only product obtained by the authors [in that experimental portion] was 2,5-dichloro-1,5-perfluorohexadiene," and point out that it was the only compound obtained by appellants when they attempted to make the perfluoroallene of the Miller patent. Thus appellants contend that the Miller patent does not disclose an operable process for making perfluoroallene.

Both the Miller patent and the publication coauthored by Miller and another, report the reaction of $CF_2 = CC1CF_2I$ in the presence of zinc and dioxane. The Miller patent, however, reports as a product of that reaction perfluoroallene b. p. −28°C, while the publication reports as a product of that reaction 2,5-dichloro-1,5-perfluorohexadiene, which is entirely different from perfluoroallene. However, the publication coauthored by the patentee and another does not purport to be an attempt to produce the perfluoroallene referred to in the Miller patent and we find no reference to the Miller patent in the publication. Certainly it seems reasonable to assume that if the authors in the work reported in the publication were endeavoring to produce the perfluoroallene mentioned in the patent, which issued more than three years *prior* to the publication of the article, they would have made reference thereto in the publication. It is reasonable to assume that Miller would not become a coauthor of an article in the same general field which would show that his patent, which issued more than three years before the publication of the article, was in error.

Furthermore, we note that the experimental portion in the publication is directed to a specific set of reaction conditions, e. g. specific quantities of zinc dust, dioxane and $CF_2 = CC1CF_2I$, specific time of addition of the $CF_2 = CC1CF_2I$ to the reaction medium and a specific time wherein the reaction mixture was held near reflux before distillation. On the other hand, the reaction described in the Miller patent is not limited to such reaction conditions. Even though the starting materials in the reaction in the article are identical to those in the patent we do not consider that Miller, in producing perfluoroallene in accordance with his patent, limited himself to the specific reaction conditions set forth in the publication. We therefore do not regard the publication as demonstrating that a person of ordinary skill in the art, attempting to follow the teaching of the patent would be unable to produce perfluoroallene.

Appellants here have submitted an affidavit to indicate that their claim is for a different compound than that of the Miller patent. The affiant, Herbert Albert Wiist, states "That a boiling point difference of 10°C involving fluorocarbons having boiling points in the range of −40°C to −20°C cannot be explained by impurities or pressure variations, particularly if the distillation is carried out at or near atmospheric pressure;" and concludes that the difference in boiling points of appellants' compound and the compound described in the Miller patent cannot be explained on the basis of impurities.

We think it fairly clear that the difference in boiling points of appellants' compound and the compound described in the Miller patent cannot be explained on the basis of impurities. However, we have no way of knowing which boiling point is correct and since the patentee has disclosed the name, structure, and method of preparation of a compound and has identified it by means of a boiling point, we think the disclosure in the Miller patent, in view of the evidence before us, sufficient to support the examiner's rejection of claim 2.

Claim 6 is directed to a normally solid polyperfluoroallene. The Miller patent indicates that the polyunsaturated fluoroolefins disclosed are exceedingly versatile compounds *for polymerizations*. Under these circumstances we consider

the concept of forming a polymer of Miller's perfluoroallene to be within the skill of one in the art.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.