## Application of Nicholas M. MOLNAR.
### Patent Appeal No. 7590.

United States Court of Customs
and Patent Appeals.

Oct. 6, 1966.

Smith, J., dissented.

———◆———

Abraham J. Nydick, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Jack Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals,[1] adhered to upon reconsideration, affirming the examiner's rejection of method claims 23–38 in application serial No. 99,758, filed March 31, 1961, for "Synergistic Mixtures of Germicides." No claim has been allowed.

The invention is a method of combatting microorganisms, sanitizing hard surfaces or fabrics, and reducing the bacterial count of the skin by subjecting it to a mixture, or a composition containing a mixture, of two known materials, referred to as "DBS" and "TBS."

Appellant's brief says:

This invention arose from the Appellant's discovery that a mixture of 4',5-dibromosalicylanilide (hereinafter called DBS) and 3,4',5-tribromosalicylanilide (hereinafter called TBS) has a broad spectrum of anti-microbial activity providing marked degerming effectiveness on both living and non-living surfaces.

Appellant's binary mixture, in the proportions of 40 to 95% of ABS [sic, DBS] and 60 to 5% of TBS, is synergistic.

In the specification, appellant explains the characteristics of TBS and DBS as follows:

* * * (TBS) is a very effective germicide for use in soap. It is excellent for degerming skin. However, its effectiveness as a disinfectant of hard surfaces and fibrous material is relatively poor. On the other hand * * (DBS) is a much better agent for disinfecting hard surfaces and fibrous materials than TBS, but is poorer in action on skin.

* * * * * *

It is among the principal objects of this invention to provide mixtures of these two halogenated salicylanilides which give anti-microbial action on living and non-living surfaces that is equal or better than that of either component alone.

All claims are method claims, claim 25 being typical:

25. Method of combatting microorganisms which comprises subjecting the microorganisms to the action of a

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Chief Judge WORLEY*, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Consisting of Examiners-in-Chief Federico and Rosa, the latter writing the opinion, and Acting Examiner-in-Chief Stone.

composition containing a mixture of 4',5-dibromosalicylanilide and 3,4',5-tribromosalicylanilide whereof the 4',-5-dibromosalicylanilide and the 3,4',5-tribromosalicylanilide in the mixture are present in the proportions of about 40–95% of 4',5-dibromosalicylanilide and 60–5% of 3,4',5-tribromosalicylanilide.

Other claims are to methods of using detergent or soap containing said antimicrobial mixture of 40–95% DBS, the balance TBS. More specific claims are to methods of sanitizing hard surfaces, fabrics, and the skin with such compositions. Eight of the 16 claims define the ratio of DBS to TBS as about 50–50. It would appear, from a reading of the specification, that the "degerming" and "anti-microbial" properties of DBS and TBS were known to appellant prior to his invention.

The sole reference is:

Stecker      2,906,711      Sept. 29, 1959
(filed Apr. 25, 1958)

Stecker discloses that mixtures of DBS and TBS are synergistic. The specification contains two examples containing data allegedly resulting from tests of binary mixtures of the two compounds, the data in example 1 being:

| Germicide | Number of Subjects | Percent Reduction in Hand Count |
|---|---|---|
| DBS | 10 | None |
| TBS | 10 | 65 |

Stecker states:

It will be noted from the foregoing results that the 5,4'-dibromosalicylanide [sic, DBS] possessed no substantivity on the skin and showed no reduction in hand count, whereas the 3,5,4'-tribromosalicylanilide [TBS] showed a 65% reduction at the end of the test.

In example 2, data resulting from "Skin disk substantivity (leaching) tests" are set forth. These data are depicted in a graph in the Stecker specification, here reproduced:

Stecker explains the data depicted on the above graph as follows:

* * * Curve A is a straight line between the zero and 100% points on which the experimental test points would have fallen if the germicidal effectiveness of the two compounds were arithmetically additive. Actually, how-

ever, the test points fall on curve B showing that, in the higher percentages of * * * [TBS in DBS] there was a marked synergistic effect of the otherwise entirely ineffective dibromo derivative in the tribromo compound. At the peak value between 75% and 90% of the tribromo derivative, the effectiveness of the mixture is 165% of the effectiveness of the pure tribromo compound. It also is noted that the shaded area C which includes mixtures containing 65% to 98% of the tribromo derivative are [sic] unexpectedly and unusually high in germicidal effect, having an effectiveness of at least 144% of that of the pure tribromo derivative. It is this range which is being claimed in the present application.

It should be pointed out that the data for the above graph were obtained from tests conducted in triplicate using aqueous solutions of " 'Ivory' brand neutral white high grade tallow toilet soap" on calf skin. Actual tests were carried out with mixtures of DBS and TBS of which

0, 25, 60, 75, 80, 90, 93, 95, 98, and 100 percent were TBS. Thus, two runs, those involving 25 and 60% TBS, fall squarely within the range of mixtures claimed by appellant.

The Patent Office position is that, in view of Stecker, DBS and TBS are individually old; that mixtures thereof are old as germicidal agents; and that mixtures of DBS and TBS are known to be, in the words of Stecker, "synergistically active in substantive hand-washing germicidal tests." The solicitor argues that the use of the claimed compositions as a sanitizing agent on hard surfaces or on fabrics would be "an obvious expedient for one skilled in the art in view of the teachings in the Stecker patent (35 U.S. C. § 103)."

During the prosecution, appellant submitted an affidavit wherein test data resulting from "Skin Disk Substantivity Test" were set forth for purposes of making comparisons with the Stecker disclosure. This comparison is set forth in appellant's brief as follows:

SIDE BY SIDE TABULATION OF MOLNAR'S DATA SET FORTH IN HIS AFFIDAVIT VERIFIED MAY 10, 1962 AND STECKER'S DATA IN THE TABLE, COLUMN 2

| Per Cent | | Zones of Inhibition | | |
|---|---|---|---|---|
| DBS | TBS | Molnar | Stecker | |
| 0 | 100 | 6.7 | 5.0 | |
| 2 | 98 | 5.8 | 6.0 | |
| 5 | 95 | | 6.3 | Range Claimed by Stecker |
| 7 | 93 | | 6.4 | |
| 10 | 90 | | 6.5 | |
| 20 | 80 | 6.1 | 6.5 | |
| 30 | 70 | 6.0 | | |
| 25 | 75 | 6.6 | 6.5 | |
| 35 | 65 | 5.7 | | |
| 40 | 60 | 8.8 | 5.5 | Range claimed herein |
| 45 | 55 | 9.2 | | |
| 50 | 50 | 9.2 | | |
| 60 | 40 | 9.8 | | |
| 65 | 35 | 9.7 | | |
| 75 | 25 | 9.3 | 3.0 | |
| 95 | 5 | 8.6 | | |
| 100 | 0 | 8.0 | 0.0 | |

Appellant argues that his and Stecker's data differ, first, as to the amount of synergistic activity present in mixtures containing from 0% to 35% TBS, and, second, as to the effectiveness of DBS in skin substantivity tests. Thus, appellant contends that "The basic issue to be decided is whether or not the dibromosalicylanilide component of Stecker's binary mixture is in fact 4′,5-dibromosalicylanilide [DBS]."

The examiner's position in this regard was:

> The fact that one investigator may start at a given point in observed activity and label this zero inhibition does not go to the issue of what the active material is.

The board in its opinion adopted the examiner's reasoning and commented further:

> In column 3, lines 4 to 19, the process of preparing 5,4′-dichloro salicylanilide is disclosed as exemplary of the process for preparing dihalosalicylanilides. From this disclosure it would appear that Stecker actually employed the 5,-4′-dibromo derivative.

The solicitor contends:

> Stecker does *not* teach, as asserted by appellant, that the DBS of Example 2 therein is *germicidally* ineffective; he merely indicates that the *skin* tests reported therein showed inactivity for that compound. This is entirely consonant with appellant's own disclosure that DBS exhibits "poorer action on skin" * * *. Moreover, Stecker discloses in his graph * * * and tabulation * * * as is also indicated by appellant * * * that the DBS of Example 2 synergises the germicidal activity of TBS.
>
> * * * the Molnar affidavit * * * in reporting on 8 mm. zone of inhibition for 100% DBS with calf skin as compared with a 5.7 zone for 100% TBS, is in conflict with the aforementioned disclosure in the present application * * * that DBS "is poorer in action on skin" than TBS. Contrary to appellant's *disclosure*, his *affidavit* indicates that DBS is more effective on skin than TBS. It is apparent that the Stecker results correspond to appellant's own disclosure whereas the latter's affidavit is in conflict therewith. This Court has recognized that where an affidavit is in conflict with the application disclosure, the latter must control; In re Smith, 183 F.2d 84, 37 CCPA 1142. Thus, the purported divergent results in appellant's tabulation * * * are based on results reported in his affidavit * * * which are in direct conflict with the appellant's disclosure.

What we think this case comes down to is that Stecker discloses appellant's germicidal mixtures, in soap, within the ranges recited in the appealed claims, and the use of these compositions for germicidal purposes by washing. That is all appellant's "methods" are. Therefore, appellant's claims were properly rejected as "unpatentable over" the sole reference. Insofar as any claim may be construed so as *not* to read on conventional *methods* of using toilet detergents (soap), including the washing of "hard surfaces" (such as the wash basin) or "fabrics" (such as one's clothing) instead of "the skin," it is reasonable to say that such specific "methods" would be obvious within the meaning of 35 U.S.C. § 103.[2]

It seems clear to us that what appellant has disclosed as his invention amounts merely to new, and possibly more accurate, data on old germicidal compositions and old methods of using them. This view does not overlook the argu-

2. While the examiner and board appear not to have referred specifically to this section of the statute, we think it clear that appellant so construed the rejection as to know that he must persuade us that his invention complied with that statute as well as 35 U.S.C. § 102. For example, we note that appellant urges that the board erred in not finding that the appealed claims define a "new and unobvious result." To the extent therefore that our decision relies upon 35 U.S.C. § 103, we think it is in accord with what appellant acknowledges and cannot be prejudicial to him. In re Hughes, 345 F.2d 184, 52 CCPA 1355.

ment, pressed before the board and before us, that Stecker could not have been using DBS because of the discrepancy between his test results and those of appellant. Obviously someone's reported test results are wrong if Stecker used what he said he used. However, the disclosure of the use of appellant's mixtures for cleansing purposes is there, wherefore appellant is not entitled to a patent. Compare In re Jacobs, 318 F.2d 743, 50 CCPA 1316, 137 USPQ 888.

The decision of the board is affirmed.

Affirmed.

SMITH, J., dissents.