54 CCPA

**Application of Max J. KALM.**

**Patent Appeal No. 7698.**

United States Court of Customs and Patent Appeals.

June 15, 1967.

Helmuth A. Wegner, Chicago, Ill., for appellant.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Appearing in Serial No. 803,847, filed April 3, 1959, entitled "3,4-Dialkyl-2-Cycloalkylmorpholines and Congeners."

2. U.S. patent No. 3,125,572, issued March 17, 1964, on an application filed July 23, 1958.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1–3[1] as anticipated by certain prior art under 35 U.S.C. § 102(e).

The invention relates to particular morpholine derivatives of the formula

wherein R for purposes here is lower alkyl, being so defined in claim 1 and 2. Claim 3 is directed to the specific compound 2-cyclohexyl-3, 4-dimethylmorpholine. According to the specification, the compounds are useful as "selective central nervous system [CNS] *depressants* —being potent barbiturate potentiators." (Emphasis supplied.)

A brief chronology of the proceedings below will facilitate an understanding of the issue involved. The examiner originally rejected claims 1–3 as "obvious to one having ordinary skill in the art. 35 U.S.C. 103" in view of the Siemer patent.[2] Siemer discloses a process for the preparation of compounds of the generic formula

where R is phenyl or cyclohexyl, $R_1$ is lower alkyl, and $R_2$ and $R_3$ may be hydrogen or lower alkyl,[3] as well as a "one

3. The only specific compounds disclosed by Siemer are 2-phenyl-3-methyl-morpholine, 2-phenyl-3, 4-dimethyl-morpholine, 2-phenyl-3-6-dimethylmorpholine, 2-phenyl-3-propyl-morpholine, and 2-cyclohexyl-3-methyl-morpholine, none of which falls within the ambit of appellant's claims.

step" process for preparing compounds of the formula

$$R_3 \overset{\overset{O}{\underset{\underset{H}{N}}{\bigcirc}}}{} \begin{matrix} R \\ CH_3 \end{matrix}$$

According to Siemer, the compounds he discloses

* * * exhibit a marked psycho-stimulating and appetite reducing effect. The morpholines that are substituted in 2, 3 position, as for example 2-phenyl-3-methylmorpholine [4] and 2-cyclohexyl-3-methylmorpholine have a *most marked anti-depressive action.* * * * (Emphasis supplied.)

The examiner predicated his § 103 rejection particularly on the latter compound, 2-cyclohexyl-3-methyl-morpholine, which differs structurally from the compounds of claims 1–3 in the absence of a methyl or other lower alkyl group in the 4-position of the morpholine nucleus.

In response to the examiner's rejection, appellant submitted an affidavit of a Dr. Drill (Drill I) under Rule 132, reporting the results of assays conducted to determine the effect of four compounds on the central nervous system. The compounds tested were the compound of claim 3 and 2 -cyclohexyl- 3 -methyl- 4 -octylmorpholine hydrochloride (the latter falling within the scope of claims 1 and 2), as well as the two specific compounds to which Siemer attributes marked antidepressive action. Drill concluded from the reported data that the reference compounds "2-cyclohexyl-3-methyl-morpholine and the corresponding 2-phenyl compound, Preludin, produced a *significantly stimulating* (95% Conf.) effect on the central nervous system," whereas the two compounds falling within the present claims "*depressed* the central nervous system."

Appellant also submitted his own affidavit, laboratory notebook exhibits, and biological testing reports under Rule 131, reporting that he had synthesized the 4-methyl compound of claim 3 and the 4-octyl compound heretofore mentioned, submitted them to pharmacological evaluation, and established "their depressant effect upon the central nervous system" in "standardized assays," all prior to July 23, 1958, the filing date of Siemer.

Subsequently, the examiner accepted the Drill I affidavit under Rule 132, finding it "to be sufficient to show a difference in kind in an evaluation of pharmacological properties as between the claimed compounds and the N-unsubstituted amines specifically disclosed by the reference," and conceded that "the instant compounds would be rendered unobvious by the Rule 132 affidavit and hence patentable. In re Papesch, [50 CCPA 1084, 315 F.2d 381,] 137 U.S.P.Q. 43." However, the examiner then proceeded to reject claims 1–3 as "fully met by Siemer," stating:

* * * The reference is considered to so completely describe the claimed morpholines as to negate patentability with[in] the meaning of 35 U.S.C. 102 (e). The reference discloses a narrow generic teaching of the claimed amines as well as a method for preparing the compounds. Also an N-homologue [the examiner was here referring to the 2-cyclohexyl-3-methyl-morpholine compound on which he originally predicated his § 103 rejection] * * * is described specifically in example 7. These disclosures by the patentee, it is submitted, are sufficient to negate patentability of the claimed amines within the test laid down in In re Petering, * * * [49 CCPA 993, 301 F.2d 676, 133 U.S.P.Q. 275].

He accepted appellant's Rule 131 affidavit "to the extent that preparation of the compounds is described therein" and as evidence of "clear conception" of those

[4.] It appears from the record that 2-phenyl-3-methyl-morpholine is marketed under the name "Preludin" as a CNS stimulant.

compounds, but found it, for various reasons, to be "unacceptable to prove a *successful* reduction to practice," i. e., appellant had not satisfactorily established the "usefulness" of the compounds prior to the filing date of the Siemer reference.

The board agreed with the examiner's rejection of the claims under 35 U.S.C. § 102(e), finding that the

> * * * reasoning of the court in In re Petering * * * is clearly applicable here to establish the anticipatory effect of the Siemer et al. disclosure.

It also agreed with the examiner that it was necessary for appellant to show that he knew of a use for his compounds prior to the filing date of Siemer in order to overcome Siemer as a reference since, according to the board, the patentee discloses "therapeutic utility" for the compounds; that appellant's Rule 131 affidavit was inadequate to establish that he had found a use prior to the filing date of Siemer; and that, as a consequence, appellant had not shown he was prima facie the first inventor of the claimed subject matter.

■ A rejection under 35 U.S.C. § 102(e) for anticipation, such as made by the Patent Office in the present case, necessarily implies that the invention sought to be patented has been "described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent," and therefore is not "new"—that there are no differences between what is claimed and what is disclosed in the prior art. Even where there are differences, "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

In making his original rejection under § 103, the examiner was faced with readily apparent differences between the subject matter "sought to be patented" and the prior art, viz. the claimed compounds are central nervous system *depressants* while the disclosed compounds of Siemer are central nervous system *stimulants*. The examiner, considering those differences, found appellant's narrow group of compounds to be unobvious, § 103, to one of ordinary skill in the art, notwithstanding the Siemer reference.

■ Bearing that determination in mind, it is somewhat difficult for us to comprehend how appellant's compounds may be *unobvious* in view of a reference, yet at the same time be said to be *described* by the same reference as the Patent Office has held here. Necessarily, a description in a reference which is insufficient as a matter of law to render a composition of matter obvious to one of ordinary skill in the art would a fortiori be insufficient to "describe" the composition as that term is used in 35 U.S.C. § 102(e), a complete description being but the ultimate or epitome of obviousness.

■ There appears to be no question that the Siemer patent does not specifically name, describe or claim any particular, individual compound anticipating appellant's claims, nor is there any suggestion by Siemer that *any* of his disclosed compounds is capable of *depressing* the central nervous system. Thus, this is not a case where a reference patent imputes particular characteristics to a readily prepared, *specifically named* and *identified* compound or composition, and a party seeking to claim the *very same* compound or composition must prove that the patent description was erroneous and that what the patent at first blush appears to expressly describe never actually existed. Cf. 35 U.S.C. § 282; In re Molnar, 366 F.2d 782, 54 CCPA 705; In re Jacobs, 318 F.2d 743, 50 CCPA 1316.

■ It is the position of the Patent Office that the presently claimed compounds fall within the scope of the

"genus" disclosed by Siemer. A cursory inspection of the Siemer reference might lead one to that unwarranted conclusion. The solicitor asks that we look at the specific exemplary compounds of Siemer [3] in order to determine the substituents he preferred and to establish the narrow scope of his generic disclosure. We have done so. If any preference of Siemer can be ascertaned, it is for compounds with a phenyl radical in the 2-position, a methyl radical in the 3-position and hydrogen in the 4-position of the morpholine nucleus, yielding the commercial stimulant "Preludin." Only when phenyl appears in the 2-position does Siemer disclose that methyl may be present in positions 4 or 6; only when methyl is in position 3 and hydrogen is in position 4 does Siemer suggest that cyclohexyl may appear in position 2. No real intimation is made as to what would happen if cyclohexyl, methyl and methyl were *simultaneously* placed in positions 2, 3 and 4, respectively. Siemer's disclosure *is* narrow. The genus constructed with the aid of Siemer's examples is much narrower than that which is depicted in a shorthand manner by Siemer's "generic" chemical formula appearing earlier in this opinion. Indeed, we think that the "genus" disclosed by Siemer is sufficiently narrow that it does not encompass compounds within the scope of appellant's claims. See E. I. duPont de Nemours & Co. v. Ladd, 117 U.S.App.D.C. 246, 328 F.2d 547.

When one speaks of a "genus" in the chemical arts, one ordinarily speaks of a group of compounds closely related both in structure and in properties. Appellant has found a group of chemical compounds which possess properties diametrically opposite to the properties disclosed by Siemer for his compounds. It is quite evident that Siemer never made the present compounds; or if he did, he never tested them to determine what effect they would have on the central nervous system, since, if he had, he could not logically have failed to report the seemingly anomalous result appellant has discovered. While it is not necessary that a reference disclose every property or attribute of a composition of matter to be a valid anticipation, appellant has found properties for his claimed compounds which are totally incompatible and inconsistent with, not merely complementary or in addition to, those attributed by Siemer to his compounds. It is our view that Siemer never intended to, nor does he, disclose compounds within the scope of appellant's claims.

The examiner, board and solicitor rely heavily on this court's decision in In re Petering. We had occasion to comment upon some limitations of that decision in In re Ruschig, 343 F.2d 965, 52 CCPA 1238, where we stated:

> We did not intend our *Petering* opinion or decision to become a precedent for the mechanistic dissection and recombination of the components of the specific illustrative compounds in every chemical reference containing them, to create hindsight anticipations with the guidance of an applicant's disclosures, on the theory that such reconstructed disclosures *describe* specific compounds within the meaning of section 102. * * *

Contrary to the solicitor's position here, the compounds which are allegedly encompassed by the general disclosure of Siemer do not constitute a "recognizable class *with common properties,*" *Ruschig*. As in *Ruschig*, the number of compounds which could be said to fall within the scope of Siemer's disclosure, considering all possible permutations and combinations, is far greater than the 20 compounds found to be disclosed by the reference in *Petering*. We do not consider the situation in *Petering* comparable to that here.

The view we take renders it unnecessary to consider appellant's evidence submitted under Rule 131, and the parties' arguments directed thereto.

The decision is reversed.

Reversed.

SMITH, J., concurs in the result.