57 CCPA

### Application of Gene R. WILDER.
### Patent Appeal No. 8194.

United States Court of Customs and Patent Appeals.

Aug. 13, 1970.

Ellsworth H. Mosher, Arlington, Va., attorney of record, for appellant; Stevens, Davis, Miller & Mosher, Arlington, Va., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, BALDWIN, and LANE, Judges, and JONES, Senior Judge, United States Court of Claims, sitting by designation.

BALDWIN, Judge.

Wilder has appealed from the decision of the Patent Office Board of Appeals which sustained the rejection of claims 2, 6, 7, 9, 11, 12 and 14 in his application[1] as unpatentable under 35 U.S.C. § 102 and 35 U.S.C. § 103 over a patent to Stahly.[2] In his brief, appellant has moved to dismiss the appeal as to claims 11, 12 and 14. That motion is hereby granted, thus leaving claims 2, 6, 7 and 9 for our consideration.

## THE INVENTION

We note, as did the board, that "the nature of the asserted invention is evident from the reproduced claims." Claims 2 and 7 are representative of the claims now on appeal. We reproduce them, at the suggestion of appellant, in analytical form:

2. Preserved rubber having minimal toxicity to human skin comprising

   [1] natural rubber having incorporated therein

   [2] an amount sufficient to inhibit degradation of

   [a] N – (1,3 – dimethylbutyl) – N' – phenyl – p – phenylenediamine

   the rubber containing said adjuvant being neither a primary irritant nor a sensitizing agent.

7. Preserved rubber having minimal toxicity to human skin comprising
   [1] synthetic sulfur-vulcanizable diene hydrocarbon rubber having incorporated therein

   [2] an amount sufficient to inhibit degradation of

   [a] N – (1,4–dimethylamyl) – N' – phenyl – p – phenylenediamine,

   the rubber containing said adjuvant being neither a primary irritant nor a sensitizing agent.

Claim 6 defines the rubber using the same broad language as claim 7, and recites the same, 1,3–dimethylbutyl inhibitor of claim 2. Claim 9 differs from claim 2 only in that the rubber claimed is "unvulcanized styrene-butadiene copolymer".

---

1. Serial No. 355,473, filed Mar. 27, 1964, for "Preserving Rubber."

2. U. S. Patent 3,163,616, granted Dec. 29, 1964, on an application filed Aug. 31, 1956.

For a further understanding of the invention, we quote from appellant's specification:

It has been long recognized that N – alkyl – N′ – phenyl – p – phenylenediamines inhibit the aging of natural rubber. More recently, it was found that N–isopropyl–N′–phenyl–p–phenylenediamine inhibits exposure cracking of synthetic rubber vulcanizates and this compound has come into considerable commercial use for this purpose. However, it is a skin sensitizer and volatile enough to cause numerous cases of skin eruption among workers processing the rubber. Moreover, it is much too soluble in the aqueous coagulation medium used for SBR to be considered for protecting unvulcanized SBR.

Appellant's claims are based on the discovery that rubber containing either of the two specific antidegradants claimed does not have the toxic effect alleged to be possessed by the other N–alkyl–N′–phenyl–p–phenylenediamines.

## THE REJECTIONS

The examiner rejected the claims on appeal "as unpatentable over Stahly under 35 USC 102." That patent contains what amounts to a generic disclosure, broadly teaching that the entire class of N–alkyl–N′–phenyl-p-phenylenediamines (to which class appellant's specific adjuvants belong) is effective for preserving all kinds of rubber against the deteriorative action of ozone. Broadly stating first that the alkyl substitute may be primary, secondary or tertiary, branched or straight chain and may be substituted with aryl or cycloalkyl groups, the patent disclosure goes on to recite that excellent stabilizing properties are possessed by those phenylenediamines in which the alkyl group contains from 1 to 19 carbon atoms and further that members of the class in which the alkyl group contains from 1 to 9 carbons "are especially effective."

Becoming more particular, later on, the patent sets out two separate groups of specific phenylenediamines "containing alkyl groups in the preferred range of number of carbon atoms". The first group contains 8 compounds, the alkyl group containing from 3 to 9 carbon atoms and showing most of the stated configurations (e. g. secondary, tertiary, aryl-substituted). The second group recites 16 more alkyl substitutes wherein the number of carbon atoms ranges from 1 to 19 and varying configurations are also indicated. Of this latter group, the express recitations of the 1,3–dimethylbutyl and 1–methylhexyl radicals are of particular interest as they are the specific disclosures upon which the appealed rejections are based.

The method of incorporating the phenylenediamines into the rubber is taught by Stahly and specific mention of several types of rubbers, all being sulfur-vulcanizable diene hydrocarbon rubbers and including both those specifically recited in the instant claims, is made. Examples describing the preservative effect on various rubbers of several of the N,N′–substituted p–phenylenediamines from both of the groups of specific compounds mentioned earlier are also given.

Stahly's patent contains no express disclosure of the exact compositions defined in the claims now on appeal nor does it contain any hint that his compositions would possess any skin irritating or sensitizing property. Regardless of these facts, the examiner took the position that the claims now before us were anticipated by Stahly's disclosure. While he conceded that the compound recited in claim 7 on appeal was not exactly recited in the patent, he felt that the recited compound and Stahly's 1–methyl hexyl variant "may be the same." When appellant submitted affidavits substantiating the asserted advantage of the claimed compositions, the examiner responded:

It is respectfully submitted that even with the affidavit and assuming that the showings of non-toxicity are completely valid for the compositions so limited by the instant claims, there

can be no patentable invention where novelty does not exist, albeit all of the properties of said compositions were not previously recognized.

\*   \*   \*   \*   \*   \*

[T]he Examiner has not ignored the limitation relative to toxicity, as urged by appellant. However, said limitation has to be considered meaningless when it only goes to describe a property of a composition recited by the instant claims which composition, itself, is shown by the prior art to be lacking in novelty since it is fully anticipated and recited.

The Board of Appeals sustained the rejection, upholding the examiner on all grounds with regard to claims 2, 6 and 9. As to claim 7, the board stated:

[T]he compound of Stahly relied upon by the Examiner is a position isomer of the compound defined by the claims. However, no showing as to difference in toxicity of these two compounds when incorporated in rubber has been made, and their chemical similarity is apparent. If the compound of claims 7 and 12 is not fully anticipated under 35 U.S.C. 102, it is obvious under 35 U.S.C. 103. The rejection of claims 7 and 12 will also be sustained.

## OPINION

Considering first the rejection of claims 2, 6 and 9 under 35 U.S.C. § 102, we have concluded that the rejection is sustainable. Appellant's arguments attacking the position taken by the Patent Office in this rejection appear to be made on three different levels. It is argued initially that the disclosure of the Stahly patent does not anticipate the claimed compositions. Secondly, it is asserted that even though there may be a technical anticipation, the discovery of the new property and the recitation of this property in the claims "lends patentable novelty" to the claims. Finally the court is urged to ignore the "fortuitous suggestions" of the prior art, overrule the "doctrine" of In

re Thuau, 135 F.2d 344, 30 CCPA 979 (1943), and recognize the commercial importance of appellant's discovery.

Employing, if we may, a syllogistic analysis to answer appellant's arguments, we start with the proposition that claims cannot be obtained to that which is not new. This was the basis of the holding in *In re Thuau*. It was the law then, is now and will be until Congress decrees otherwise. So the first inquiry must be into exactly what the claims define. Towards that goal, we state the next proposition, which is that every limitation positively recited in a claim must be given effect in order to determine what subject matter that claim defines. However, recitation, in a claim to a composition, of a particular property said to be possessed by the recited composition, be that property newly-discovered or not, does not necessarily change the scope of the subject matter otherwise defined by that claim. No matter how we read appellant's claims, they define nothing other than rubber compositions containing particular rubbers combined with particular antidegradant compounds.

Once having ascertained exactly what subject matter is being claimed, the next inquiry must be into whether such subject matter is novel. If an applicant had to prove novelty before he could obtain a patent he would have an almost insurmountable burden. Therefore, the statute provides for what may be said to be a presumption of novelty in the language of section 102 "a person shall be entitled to a patent *unless* \* \* \*". (Emphasis added). What this means, in an ex parte proceeding to obtain a patent, is that the Patent Office has the initial burden of coming forward with some sort of evidence tending to disprove novelty. In this case, the examiner came forward with evidence, i. e., the Stahly patent, tending to show that the subject matter of appellant's claims "was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the appli-

cant." 35 U.S.C. § 102(e). Our province now becomes an evaluation of the legal sufficiency of that showing, taking into account appellant's attacks against it, and weighing in any evidence which he might have submitted tending to show the contrary.

■■ Simply stated, a prior publication or patent description will be considered as anticipatory when its disclosure is at once specific and enabling with regard to the particular subject matter at issue. In effect, a prima facie case is made out whenever a reference is shown to contain a disclosure which is specific as to every critical element of the appealed claims. However, such disclosure may yet be held not to legally anticipate the claimed subject matter if it is found not to be sufficiently enabling, in other words, if it does not place the subject matter of the claims within "the possession of the public." See, e. g., In re LeGrice, 301 F.2d 929, 49 CCPA 1124 (1962); In re Brown, 329 F.2d 1006, 51 CCPA 1254 (1964).

Those parts of the reference patent relied on below as making out a specific disclosure of the claimed compositions have been summarized earlier. In arguing against a finding of specific disclosure, appellant emphasizes the fact that there is no *express* disclosure showing the particular rubber compositions here claimed. He also points out the large number of variations possible with Stahly's disclosure and the fact that "Stahly singles out the N–isopropyl–N'–phenyl–p–phenylenediamine as unique." On the other hand, we have noted that the particular adjuvant of these claims is one of 24 expressly disclosed as preferred by Stahly. In addition, the reference teaching is broadly enabling with regard to the manner of making and using both the specific adjuvant and the rubber compositions containing it. Furthermore, the patentee mentions no more than about a half dozen rubbers, all of which are "sulfur-vulcanizable diene hydrocarbon" rubbers, as possible components of the resistant compositions, with particular emphasis being placed on the

same two rubbers specifically recited in claims 2 and 9 on appeal. Taking all these factors into account, we are constrained to hold that the Stahly patent does contain what amounts to a specific description of at least those rubber compositions containing either natural rubber or styrenebutadiene copolymer rubber with each and every one of the 24 adjuvants expressly mentioned. The compositions of claims 2, 6 and 9 are thus specifically described by the reference.

Appellant has also submitted evidence, by way of affidavit, showing that the rubber compositions of his claims possess a property unexpectedly superior in a secondary but important characteristic, the hoped-for inference apparently being that if the claimed composition was, in fact, known by the reference patentee, it would have been listed as preferred above all other possibilities, because of this property. If this evidence is submitted in an attempt merely to prove the absence of a physical, tangible existence of the claimed compositions in the prior art it is inapposite, since such proof would not necessarily negate the fact that the reference does, in fact, *describe* those very compositions. The statute requires nothing more.

Nor does such evidence require the inference that the compound apparently disclosed by Stahly and the adjuvant recited in the rejected claims are necessarily different. In the past we have accepted such an inference and found no anticipation where it has been proved that a compound apparently specifically described in a reference disclosure could not possibly have been made by the process taught by the reference, In re Jacobs, 318 F.2d 743, 50 CCPA 1316 (1963), or where the compounds claimed had properties *completely* different from those attributed to them by the reference description, In re Kalm, 378 F.2d 959, 54 CCPA 1466 (1967). The evidence submitted here, however, quite reasonably also permits the inference that the reference patentee might only have been unaware of a particular prop-

erty of the compound he did disclose. Such proof clearly falls short of defeating a case of anticipation.

With regard to the rejection of claim 7 under 35 U.S.C. § 103, appellant asserts that he has met his burden of demonstrating unobviousness by showing the unexpected non-toxicity of his composition and argues that he should not have to conduct experiments to determine the toxicity of rubber containing the isomer mentioned by Stahly. He also points out that he has demonstrated in his affidavits that the six-carbon, 1,3–dimethylbutyl compound of claims 2, 6 and 9 has unexpectedly different properties from its isomers and argues that this fact alone should be enough to support an inference that the properties of the seven-carbon, 1,4–dimethylamyl adjuvant of claim 7 would be similarly different from those of its isomers.

 Appellant's first assertion is unacceptable. As we pointed out recently in In re Hoch, Cust.Ct., 428 F.2d 1341, decided July 30, 1970, the mere fact that an applicant has discovered an *unexpected property* in a compound which is structurally similar to that disclosed in the prior art is not enough, in and of itself, to make his claimed subject matter unobvious. The law is clear in requiring a showing of unexpected *differences* between the properties of the compound recited in the instant claimed composition and those possessed by the prior art.[3]

However, we can see no reason why such differences and their unexpected nature may not be demonstrated by other than a direct comparison. The problem is simply one of evidence and it should be a simple matter to accord various types of proofs their appropriate weight. In the present case, appellant's

indirect, circumstantial evidence has satisfied us that the composition of claim 7, more likely than not, does possess properties *different from* those possessed by a composition containing the seven-carbon isomer disclosed by the reference and that such differences would have been unexpected to one having ordinary skill in the art. We hold, therefore, that he has overcome the prima facie showing made by the Patent Office and that the rejection of claim 7 under 35 U.S.C. § 103 should be reversed.

### SUMMARY

The decision of the Board of Appeals is affirmed as to claims 2, 6 and 9 and reversed as to claim 7.

Modified.

---

3. It will be apparent that we are treating the instant claims, concededly drawn to compositions, as if the only important element is the antioxidant adjuvant and the rubber merely acts as a matrix or environment wherein the important properties of the adjuvant compound are manifested. In this respect the claims may be said to be similar to those drawn to pharmaceutical or insecticidal compositions similarly containing only a single "active" ingredient. It should also be apparent that this approach cannot be utilized with all claims drawn to compositions.