TITANIUM METALS CORP., Plaintiff,

v.

Gerald J. MOSSINGHOFF, Commissioner of Patents & Trademarks, Defendants.

No. CA 79–1119.

United States District Court, District of Columbia.

Nov. 28, 1984.

William R. Hinds, Larson, Roberta B. Larson, Taylor & Hinds, Arlington, Va., for plaintiff.

Joseph F. Nakamura, U.S. Patents & Trademarks, Washington, D.C., for defendants.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff brought this action pursuant to 35 U.S.C. § 145. Plaintiff requests that the Court find that the plaintiff is the assignee and owner of all right, title and interest in and to the invention and Application Serial No. 598,935, and as such is entitled to receive United States Letters Patent for Titanium Alloy as specified in Claims Nos. 1, 2 and 3. The case came before the Court for trial and this Memorandum constitutes the Court's findings of fact and conclusions of law. *See* Fed.R. Civ.P. 52..

I

The underlying facts are as follows: The plaintiff is incorporated in the state of Delaware and has its principal place of business in Pennsylvania. It is the assignee of the application and the invention which is the subject of this litigation. The inventors are Loren C. Covington and Howard R. Palmer and they assigned all right, title and interest in the invention and the application to the plaintiff on July 21, 1975.

That assignment is recorded in the United States Patent and Trademark Office under date of August 6, 1975 at Reel 3218, Frame 120.

Plaintiff describes the invention as follows: The invention is a titanium base alloy having good corrosion resistance in hot brine solutions. The broad composition of the alloy disclosed and claimed in the application is 0.6%–0.9% nickel, 0.2%–0.4% molybdenum, up to 0.2% maximum iron, balance titanium. The preferred composition of the alloy, as set forth in Claim 3 of the application, is 0.8% nickel, 0.3% molybdenum, up to 0.1% maximum iron, balance titanium. The claimed alloy has substantial uses in hot brine solutions at temperatures on the order of 185 degrees C and in other corrosive environments because of its excellent corrosion resistance. In addition to having good corrosion resistance, the claimed alloy is sufficiently ductile to be fabricated into practical structures. Fabricability is an important consideration since a primary use of the alloy is in the manufacture of welded tube which requires good rollability. Structures fabricated from the alloy are used in equipment such as desalination units, salt evaporators, waste disposal systems and cloride cells.

The claimed ranges for the nickel and the molybdenum are both narrow and critical, and the iron content of the alloy is important. The criticality of the nickel and molybdenum contents of the alloy is shown by their effect upon corrosion resistance and fabricability. For example, in Table III on Page 7 of the Application Specifications, it is shown that 0.6%–2.0% nickel in an alloy including 0.3% molybdenum has a substantial beneficial effect upon the corrosion rate of the alloy. However, nickel in excess of 0.9% results in decreases in notch tear strength and bend ductility which cannot be tolerated because the metal cannot be fabricated and, hence, is of no practical value.

Test results reported in the Table IV on page 9 of the Application shows that the passivation of a Ti-Ni-Mo alloy in hydrocloric acid is not achieved until the nickel content is at least about 0.6% and, therefore, this is the minimum amount of nickel which must be included in the alloy. The data in the Table shows the corrosion potential of various alloys at 95 degrees C in hydrocloric acid. The corrosion potential is shifted in the positive direction by the inclusion of nickel and the potential reaches the passive region in a Ti-Ni-O.3% Mo alloy when the nickel content is 0.6% or more.

The effect of molybdenum on the corrosion rate of the alloy is shown by the data in Table VI on pp. 13–15 of the Application Specification. It is there shown that molybdenum increases the corrosion resistence of the alloys by stabilizing the passive behavior. The criticality of a minimum molybdenum content of 0.2% is shown by comparing the data for titanium base compositions having 0% Mo-0.8% Ni, 0.1% Mo-0.8% Ni, 0.2% Mo.-0.8% Ni and 0.3% Mo.-0.8% Ni. The comparison shows that the corrosion rates are erratic and unacceptably high for the compositions which have less than 0.2% of molybdenum. The criticality of the maximum nickel and molybdenum contents of the alloy is shown by data in Table VII on pp. 16 and 17 of the Application Specification. The data on Table VII shows that more than 0.9% nickel or more than 0.4% molybdenum causes in loss in notch tear strength and an increase in bend ductility which means that the alloy cannot be readily fabricated into usable structures.

The Application claims are: (1) a titanium base alloy consisting essentially by weight of about 0.6% to 0.9% nickel, 0.2% to 0.4% molybdenum, up to 0.2% maximum iron, balance titanium, said alloy being characterized by good corrosion resistance in hot brine environments, (2) a titanium base alloy as set forth in claim one having up to 0.1% maximum iron, balance titanium, and (3) a titanium base alloy as set forth in claim one having .0.8% nickel, 0.3% molybdenum up to 0.1% maximum iron, balance titanium. *See* Pretrial Brief for Plaintiff at 2–4.

The Application is directed to a titanium base alloy having very small additions of nickel and molybdenum with a limited

amount of iron which combines good resistance to corrosion with good tensile properties and good fabricability.

The issues before the Court are whether Claims 1, 2 and 3 of the application are anticipated under 35 U.S.C. § 102 and whether Claim 3 is obvious under 35 U.S.C. § 103 from a consideration of an article entitled "Investigation of the Mechanical Properties of Ti-Mo-Ni Alloys" written by two Russians, S.V. Kalabukhova and V.S. Mikheyev (hereinafter referred to as "the Russian article").

The Patent Office Examiner rejected Claims 1–2 as anticipated under Section 102 by the Russian article, and rejected claim 3 as obvious under Section 103 as a result of the Russian article. The Board of Appeals affirmed the Patent Office Examiner's final rejection of claims 1–3 as anticipated under 35 U.S.C. § 102 by the Russian article.

## II

A plaintiff in an action brought pursuant to 35 U.S.C. § 145 has a heavy burden. "Because the 'Patent Office [is] an expert body preeminently qualified to determine questions of this kind' ..., its conclusions are entitled to a strong presumption of validity." *Pro-Col Corp. v. Commissioner of Patents*, 141 U.S. App.D.C. 142, 143, 436 F.2d 296, 297 (1970) (citations omitted). "In these circumstances [the court] is authorized to reverse the decision ... only if the Patent Office did not have 'a rational basis for [its] conclusions' ... or if [the plaintiff] presented *new evidence* ... which leads to a 'thorough conviction' that [the plaintiff] should prevail." *Id.* (citations omitted, emphasis this Court's). "In trials de novo under 35 U.S.C. § 145, great weight attaches to the expertise of the Patent Office and its findings ... will not be overturned unless *new evidence* is introduced which carries a 'through conviction' that the Patent Office erred." *DeSeversky v. Brenner*, 137 U.S.App.D.C. 369, 370, 424 F.2d 857, 858 (1970) (emphasis the Court's). "Deference is owed to the findings of the Patent Office." *Puharich v. Brenner*, 134

U.S.App.D.C. 399, 402, 415 F.2d 979, 982 (1969).

## III

The Patent Examiner rejected Claims 1 and 2 pursuant to 35 U.S.C. § 102, as having been anticipated by the Russian article, and he rejected Claim 3, pursuant to 35 U.S.C. § 103, as being obvious in view of the Russian article. The Board of Appeals upheld the Patent Examiner's decision, but did so based on Section 102. The Court concludes that the Claims are patentable.

■ While it is true that the plaintiff has a heavy burden, *see* Part II, *supra*, it is one which may be overcome by clear and convincing evidence, or if the Court is "thoroughly convinced" that the determination by the Board was in error.

■ Turning first to the issue raised under Section 102, the Court notes that that section has been interpreted as precluding the grant of a patent only when the claimed invention is described in a printed publication in such a manner that the disclosure in the publication is specific to every critical element of the application claims and when the disclosure in the publication is sufficiently enabling to place the subject matter claimed in the application in the public knowledge.

Simply stated, a prior publication or patent description will be considered as anticipatory when its disclosure is at once specific and enabling with regard to the particular subject matter at issue. In effect, a prima facie case is made out whenever a reference is shown to contain a disclosure which is specific as to every critical element of the appealed claims. *However, such disclosure may yet be held not to legally anticipate the claimed subject matter if it is found not to be sufficiently enabling, in other words, if it does not place the subject matter of the claims within "the possession of the public."*

*In re Wilder*, 429 F.2d 447, 451, 57 CCPA 1314 (1970) (citations omitted, emphasis this Court's). *In Application of LeGrice*, 301 F.2d 929, 936, 49 CCPA 1124 (1962), the court observed:

We think it is sound law, consistent with the public policy underlying our patent law, that before any publication can amount to a statutory bar to the grant of a patent, its disclosure must be such that a skilled artisan could take its teachings in *combination with his own knowledge of the particular art and be in possession of the invention.*

(Emphasis in the original).

■ It seems to this Court that the Hall, Rosenberg, and Palmer affidavits and the Minkler declaration, demonstrate that the invention was not anticipated by the Russian article. Each of the above persons qualifies as an expert in the field of metallurgy. Hall notes that it is his opinion, "that a titanium base molybdenum—nickel alloy with a claimed 0.2% to 0.4% molybdenum and 0.6% to 0.9% nickel would not be exclusively selective for melting by one skilled in the art of titanium metallurgy unless that person made the selection on the basis of knowledge first obtained from the specification of application serial number 598,935." Hall Affidavit ¶ 16. If that opinion is to be accepted, it would seem that the invention, at least to that extent, was not anticipated. Rosenberg states that "[b]ased upon the data set forth in the specification of application serial number 598,935 and the disclosures at pp. 131–133 of the *Russian Metallurgy (Metally)*, it is my opinion that a Ti-Mo-Ni alloy with a specific minimum and maximum limitations on the amounts of both nickel and molybdenum which is claimed in application serial number 598,935 could not be determined by one skilled in the art of titanium metallurgy from a consideration of the teachings at pp. 131–133 of *Russian Metallurgy (Metally)*." Rosenberg Affidavit. ¶ 21. What has been said with respect to the Hall Affidavit applies with equal force to those comments by Rosenberg.

The quoted opinions of Hall and Rosenberg, together with the comments of Minkler and Palmer are in the view of this Court, persuasive, and of course, contrary to the final determination by the Board. Nevertheless, up to this point, the Court, having in mind the heavy burden on the plaintiff *and* the fact that the Board had an opportunity to consider and weigh the above affidavits, cannot say that those affidavits standing alone would be sufficient to overturn the decision of the Board. Thus, while the Court would have reached a different result than the Board based upon the above affidavits and the declaration and the record before the Board, the Court cannot say that it is so "thoroughly convinced" that it concludes that the decision of the Board must be overturned.

Here however, another factor has been added, that is the testimony of Dr. Williams. Dr. Williams, like the affiants, is an expert and is a member of the faculty of the Metallurgy Department of Carnegie-Mellon University in Pittsburgh. Unlike the other experts, he is not employed by the plaintiff. His testimony fully supports the arguments made by the plaintiff in this case. The following is illustrative of the opinions expressed by Dr. Williams during the trial:

Q. Would either of those alloys [referred to in the Russian Article] be within the scope of a claim in Patent Application Serial No. 598,935?

A. No. The broad claim, which is claim No. one is .2 to .4 and .6 to .9 so you miss basically on both counts.

(Transcript 37). With respect to the overall disclosures in the Russian Article Dr. Williams states:

Q. Does the article direct you as one skilled in the art to a titanium alloy having nickel present in an amount between .6 and .9 percent and molybdenum in an amount between .2 and .4 percent?

A. In those ratios under no circumstances.

Q. Is there anything in the article which directs you to such an alloy?

A. No.

Q. Is there anything mentioned in the article about corrosion resistence?

A. No. Absolutely nothing. It's only mechanical properties. The only other property they even mention is in the very high solute alloys of 14 to 15 percent alloys. They mention that they were hard to forge.

Based upon the testimony of Dr. Williams the Court is satisfied that the only way one would reach the plaintiff's claimed alloy composition from the disclosures in the Russian article is by experimentation. The testimony offered on behalf of the plaintiff at the trial is uncontradicted by the defendant. The Court finds that testimony to be very persuasive, and the Court concludes that the plaintiff has demonstrated by clear and convincing evidence that the determination by the Board of Appeals was in error. The Court concludes that Claims 1, 2 and 3 should not have been rejected on the basis of anticipation pursuant to 35 U.S.C. § 102. Moreover, the Court concludes that Claim 3 should not have been rejected as being obvious pursuant to 35 U.S.C. § 103.

Thus, the Court finds as a fact and concludes as a matter of law that the decision of the Board of Appeals was in error. The testimony of Dr. Williams, which remains uncontradicted, adds sufficient weight to the plaintiff's side to tip the scales and, in the Court's view, to result in clear and convincing evidence that the application should not have been rejected.

An appropriate order has issued authorizing the Commissioner of Patents and Trademarks to allow Claims 1–3.